## 9811

### GIBBES MACHINERY CO. v. SOUTHERN RY. CO.

#### (93 S. E. 718.)

1. CARRIERS—CARRIERS OF GOODS—CLASSIFICATION.—A shipper of partially burned engines to the factory for rebuilding cannot recover the difference between the rate on engines and that on scrap iron when at the factory it is discovered that the engines cannot be rebuilt, since classification is determinable at the date and point of shipment, though neither party is bound if the rate is incorrect.

2. CARRIERS—CARRIERS OF GOODS—CLASSIFICATION.—Under the rule of the Interstate · Commerce Commission making the rate on scrap iron apply only to scraps and pieces of iron and steel which cannot be again used for the purposes for which they were used when new, a shipper of burned engines to the factory for the purpose of rebuilding is not entitled to the scrap iron rate, though the engines cannot be profitably rebuilt.

Before SMITH, J., Columbia, July, 1916.   Affirmed.

Action by the Gibbes Machinery Company against the Southern Railway Company.    From a judgment of nonsuit, plaintiff appeals.

*Messrs. A. M. Lumpkin* and *M. C. Lumpkin,* for appellant, cite: *As to charges:* 90 S. C. 475.    *Estoppel:* 11 A. & E. Enc. of L. 429; 13 S. C. 369; 33 S. C. 209; 48 S. C. 226.

*Mr. Frank G. Tompkins,* for respondent, cites: 41 I. C. C. R. 438; 90 S. C. 475 and 521; 92 S. C. 291; 94 S. C. 136; 95 S. C. 430; 100 S. C. 475; Ann. Cas. 1913d, 226.

September 28, 1917.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff appeals from judgment of nonsuit in this action to recover an alleged overcharge of freight on an interstate shipment.

In January, 1912, plaintiff's storehouse in the city of Columbia, S. C., was destroyed by fire, and a lot of gasoline engines stored therein were badly damaged.    All the small parts, that is, the trimmings and working parts, that were made of brass, wrought iron or steel, were melted or broken off, and only the bodies of the engines, which were of cast iron, were left whole.

Nevertheless plaintiff hoped that they might be rebuilt at the factory where they were originally made, and, for the purpose of having them rebuilt, if it could be done profitably, shipped them, together with such parts as plaintiff thought could be used in rebuilding them, to the manufacturers, at Hillsdale, Mich.

Plaintiff offered to ship them as scrap iron, but defendant refused to receive them as such, and they were shipped as "burned engines," and the rate applicable to that class of

freight was paid. Before shipping them, plaintiff wrote defendant as follows:

"We will in the next day or two ship Southern car No. 53837 loaded with engines that went through our fire and consigned same to the Alamo Mfg. Co. at Hillsdale, Mich. * * * We would like for you to take a look at these engines before they go. We are sending them to the factory to determine whether or not they can be again put in salable condition, and are paying the freight charges based on the machinery rate. If upon arriving there it develops that the engines are worthless, we will enter claim with your line for the overcharge in freight based on the scrap iron rate."

When the engines arrived at Hillsdale, they were examined by the manufacturers, who informed plaintiff that it would cost more to rebuild them than new engines were worth; and they were sold as scrap iron for plaintiff's account. Whereupon, plaintiff brought this action to recover the difference between the rate paid and that which would have been paid if the shipment had been classed as scrap iron.

Plaintiff admits that, if it had been known that the engines could not profitably be rebuilt, they would not have been shipped at all, for, as scrap iron, they were worth as much here as at Hillsdale.

The justice of the case as well as the law is with defendant. Plaintiff had no right to require defendant to assume or bear any part of the expense incident to its experiment. Under the act of Congress, the classification of the shipment was to be determined at date and point of shipment, and charges made and collected according to the schedules and tariffs filed with the commission. True, under the act, neither carrier nor shipper is bound by the classification made or rate charged, if it is not correct.

But, according to the rule adopted by the commission for determining when a shipment may be classed as scrap iron,

12—108.

the shipment in question was properly classified. The rule reads: "The ratings specified herein on scrap iron will apply only on scraps or pieces of old or second-hand iron or steel which cannot be again used for the purposes for which they were used when new, and said ratings will not apply on old or secondhand machinery, engines, boilers, or similar articles, unless same are broken into scraps or pieces at the point of shipment before being tendered to the carrier."

The evident purpose of the rule is to prevent the shipment of old or secondhand machinery, which may be rebuilt or repaired, at the rate charged for the transportation of scrap iron; and, to that end, it provides that the scrap iron rate will apply "only on scraps or pieces or old or secondhand iron or steel which cannot be again used for the purposes for which they were used when new." Note that it is not said "which cannot be profitably or advantageously used again." These engines could and would have been used again but for the fact that it would not have been profitable to use them.

They are as clearly excluded from the scrap iron rate by the second provision of the rule, to wit, that that rate will not apply to old or secondhand engines, unless they are broken into scraps or pieces. These engines were not broken into scraps, but were whole, so that they could have been used again for the purposes for which they were used when new; whether profitably or not is not the test pre-scribed by the rule.

Judgment affirmed.